*142 The Chief Justice delivered the opinion of the court.
Peter Barker, John Colvin and Joseph E. Garwood, were lessees of a fulling mill, for which six months’ rent became due on the 25th September, 1822, to John Paul and Joseph M. Paul, the landlords. On the 26th of October, 1822, Peter Barker made an assignment of all his real and personal estate to Hoskins and Kinsey, the plaintiffs in this case, for the benefit of his creditors, according to our statute of the 23d February, 1820. On the 5th November, 1822, the landlords distrained certain pieces of unfinished sattinet and kerseymere then in the fulling mill, which had been sent there by Barker, previous to the assignment, for the purpose of being fulled, and which are part of the goods mentioned in the inventory accompanying the assignment. The validity of. the assignment and the conformity to the statute of the proceedings of the assignees under it, are not brought into question. The assignees prosecuted an action of replevin and now insist that the goods were not distrainable. 1. Because they were not at the time of the distress the goods of Barker, the tenant. 2. Because they were privileged from distress, having been sent to the mill in the way of trade.
1. By the eighth section of our statute concerning distresses, Rev. Laws, 201, it is declared to be lawful to take and *113] seize as a *distress for arrears of rent, any of the goods and chattels of the tenant, and not of any other person although in possession of such tenant, which may be found on the demised premises, except such goods and chattels as are by law privileged from distress. To understand the just operation of this section, and to give it a correct construction, it is necessary to recur to the common law as it stood at the making of the statute, and which has been thereby altered. At common law, whatever goods and chattels, except exempted under particular circumstances, as when sent there in the way of trade, and the *143 like, the landlord found on the premises, whether they belonged in fact to the tenant or a stranger, were liable to distress for rent. 3 Bl. Com. 8. As if a stranger sent his horse or cattle on the demised premises to pasture, they might be immediately distrained by the landlord; and so far was the rule considered to extend, that in the case of Francis v. Wyatt, 3 Burr. 1498, it was hold that a gentle-, man’s carriage sent to a livery stable was liable to distress for rent duo from the tenant of the stable. The object of the alteration introduced by our statute, was to restrain the generality of the right of distress as it stood at common law, and to establish a rule more just in its operation, and more conformable to public utility and convenience. But neither the reason of the thing, the design of the legislature, nor the remedy intended, will justify the extension of the exemption to the goods now in question. The statute will not hear such a construction. The evil to be corrected was the injustice of seizing the property of a stranger, when it happened to be brought, on some lawful occasion and for some lawful purpose, upon the premises, and applying it to the payment of a debt of the tenant. There is no such injustice in taking the property of the tenant, which may have been on the premises during the whole period of the demise, and up to the moment of seizure, though a short time before placed by him in a course of application to the payment of his debts. The palpable difference between the two cases is, that in the one, property which never belonged to the debtor is snatched from the innocent owner; and in the other, a mere preference over other creditors is given to the landlord, the payment of whoso claim for rent is always a favored object of the law. In the one case, the property of a man, without fault and without compensation, is taken from him; in the other, no injury is really done to creditors, because ail calculate on t.io liability of the goods to satisfy.the arrears *of [*114 rent. It is true the legal ownership of the property is, by *144 the assignment, passed from the debtor and vested in the assignees, but it is sub modo only; and the construction I have given to the statute is supported by. the thirteenth section of the act respecting assignments, Rev. Laws 676, which declares the assignee to have as full power and authority to dispose of the estate, as the debtor had at the time of the assignment.
2. According to the common law, goods otherwise liable to distress, are, under .certain circumstances, exempted; thus, corn sent to a mill, yarn at a weaver’s, cloth at a tailor’s shop to be made into garments, and the like, Co. Lit. 47, a; and the principle doubtless extends to unfinished cloth sent to a fulling mill to be wrought. This protection is preserved by our statute. “ Such goods and chattels as are by law privileged from distress,” are expressly saved from pliability. But this is an exception to the general rule at common law subjecting to distress the goods even of a stranger found on the premises. It was designed for the encouragement and benefit of trade; and extends only to the goods of others, not to the goods of the tenant himself. These are not exempted, although on the premises, or sent thither by him to be wrought upon according to his trade. Blackstone says, “ the articles privileged are supposed in common presumption not to -belong to the owner of the house, but to his customers.” 3 Bl. Com. 8. Hargrave, in note 295, on Co. Lit. 47, a, mentions some instances of exemption from distress, and then refers to the case of Francis v. Wyatt, “ for other cases, in which things, the property of strangers, are privileged from distress for the. sake of trade and commerce.” In Gisbourn v. Hurst, 1. Salk. 249, the court state the rule to be that “ goods delivered to any person exercising a public trade or employment, to be carried, wrought or managed in the way of his-trade or .employ, are, for that time, under legal exemption, and privileged from distress.” . The true foundation of the,exemption from distress in the excepted cases is said to be, *145 tho detriment the common weal would suffer if such tilings should bo liable to distress for rent.” Now it is manifest the common weal can suffer only by distraining the goods of strangers, and never by distraining those of the tenant himself.
We are, therefore, of opinion, that the goods seized were liable to distress, and that judgment should bo rendered for the defendants.